UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RUSSELL HEBERT, JR., on behalf of himself and all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of Department of Homeland Security;<br><br>DEPARTMENT OF HOMELAND SECURITY;<br><br>DEANNE CRISWELL, in her official capacity as Administrator of the Federal Emergency Management Agency;<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY;<br><br>FEDERAL INSURANCE AND MITIGATION ADMINISTRATION;<br><br>DEFENDANTS. | ACTION NO. 2:23-cv-01869-DJP-JVM;<br>SECTION P<br>District Judge Darrel J. Papillion<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

LEGAL STANDARD ...................................................................................................................... 3

THE MAURSTAD DECLARATION IS NOT PROPER EVIDENCE ......................................... 4

STATUTORY AND REGULATORY FRAMEWORK ................................................................. 5

ARGUMENT .................................................................................................................................. 7

    A.    Plaintiffs Possess Article III Standing.................................................................................. 7

      i.    Plaintiffs have sufficiently alleged a concrete injury in fact. ......................................... 8

      ii.    Defendants' assertion that Plaintiffs will receive speculative "future premium savings" is unfounded, unsupported and insufficient to defeat Plaintiffs' standing........................... 10

      iii.    The harm suffered by Plaintiffs is fairly traceable to the Defendants implementation of Risk Rating 2.0. ..................................................................................................................... 11

    B.    Plaintiffs Assert Cognizable Harm Based on Other Interests. ....................................... 11

    C.    Plaintiffs' Claims are Within the "Zone of Interest" Contemplated by NEPA.............. 13

    D.    The Federal Government Waived Sovereign Immunity. .................................................. 15

    E.    Plaintiffs adequately state a Takings Clause Claim. ...................................................... 16

      iv.    Regulatory Taking Claim. ............................................................................................. 16

CONCLUSION ............................................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................ 4

*Bond v. United States*, 564 U.S. 211, 219, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011) ................... 4

*Burns v. E. Baton Rouge Par. Prison*, No. 14-245-JWD, 2015 WL 2163946, at *2 (M.D. La. May 7, 2015) ............................................................................................................. 5

*Clarke v. Sec. Indus. Ass'n*, 107 S.Ct. 750, 93 (1987) ................................................ 13

*Collins v. Morgan Stanley Dean Witter*,224 F.3d 496, 498 (5th Cir. 2000)................................. 4

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016)........................................................ 3

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ........................... 4

*Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 294 n.6 (5th Cir. 2018) ............................................................................................................. 14

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987) ...................................................................................................... 15

*Fla. Key Deer v. Paulison*, 522 F.3d 1133, 1142-44 (11th Cir. 2008) .................................. 14, 15

*Fla. Key Deer v. Stickney*, 864 F. Supp. 1222, 1233 (S.D. Fla. 1994) ........................... 15

*Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 335 (5th Cir. 2021)........................................ 8

*Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) .................................................... 4

*Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).................................................... 6

*Haase v. Sessions,* 835 F.2d 902 (D.C. Cir. 1987) ...................................................... 9

*Hannover Corp. of Am. v. Beckner*, 211 B.R. 849, 859-60 (M.D. La. 1997) .............................. 5

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1009 (5th Cir. 1998)... 4, 5

*Jacobs v. United States*, 290 U.S. 13, 16 (1933) ......................................................... 15

*LeBeouf v. Manning*, 575 Fed.Appx. 374, 375-76 (5th Cir.2014) .................................. 5

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164 (1982) ........... 16

*Loughlin v. U.S.*, 230 F. Supp. 2d 26 (D.D.C. 2002) ..................................................... 3

*Louisiana v. DHS*, No. 2:23-cv-01839 (Dkt. 75, at 1-9) ................................................ 2

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016, 112 S. Ct. 2886, 2894 (1992).................. 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351

(1992) .................................................................................. 7, 8, 9, 13, 14

*Montez v. Department of Navy*, 392 F.3d 147, 60 Fed. R. Serv. 3d 395 (5th Cir. 2004) .............. 3

*Navajo Nation v. Department of the Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017).................... 13

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646 (1978) .............. 16

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158 (1922)................................ 16

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) .................................... 5

*Sierra Club v. Utah Air Quality* 148 P.3d 975 (Utah 2006) ........................................ 12

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ......... 8

*Spokeo, Inc. v. Robins*, 578 U.S. at 339, 136 S.Ct. 1540 ............................................ 8

*Tex. Democratic party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006).................................... 8, 9

*TransUnion LLC v. Ramirez*, U.S., 141 S. Ct. 2190, 2200, 210 L.Ed.2d 568 (2021) ................... 8

*Trump v. Hawaii*, U.S., 138 S. Ct. 2392, 2416, 201 L.Ed.2d 775 (2018)...................................... 8

*United States v. Dickinson*, 331 U.S. 745, 748 (1947) ............................................... 16

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858,

146 L.Ed.2d 836 (2000) ......................................................................... 8

iii

*West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978) ........................................................... 6

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981) ................................................. 3

*Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 310-11 (5th Cir. 2023) ........... 11

## Other Authorities

27A Fed. Proc., L. Ed. § 62:433 ....................................................................................... 3

27A Fed. Proc., L. Ed. § 62:433) ...................................................................................... 3

Pub. L. 112-141 § 100202, 126 Stat. 405 ...................................................................... 7

Pub. L. No. 90-448, §§ 1301-1377, 82 Stat. 476, 572-89 ............................................... 6

Pub.L. No. 90-448, 82 Stat. 476 ...................................................................................... 6

## Constitutional and Codal Provisions

42 U.S.C. § 4001 ............................................................................................................. 6

42 U.S.C. § 4022(b) ...................................................................................................... 14

42 U.S.C. § 4321 ....................................................................................................... 1, 14

42 U.S.C. § 5170 ............................................................................................................. 6

42 U.S.C. §§ 4001-4129 ................................................................................................. 6

42 U.S.C.A. § 1983 ....................................................................................................... 15

42 USC § 4002(a)(2) .................................................................................................. 2, 14

44 C.F.R. § 62.23(i)(9) .................................................................................................... 6

Administrative Procedure Act ....................................................................... 2, 10, 12, 16, 17

Biggert-Waters Act .......................................................................................................... 6

Environmental Protection Act ........................................................................................ 17

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 3

Homeowner Flood Insurance Affordability Act ............................................................... 7

National Environmental Protection Act.................................................................. 1, 3, 13, 14, 15

National Flood Insurance Act ........................................................................................ 5

## **INTRODUCTION**

Plaintiffs are a proposed class of Louisiana National Flood Insurance Program ("NFIP") policy holders who suffered injury-in-fact damages due to FEMA's adjustment to the Equity in Action insurance policy calculation also known as Risk Rating 2.0. FEMA silently implemented Risk Rating 2.0, "an entirely new system" that completely restructures how FEMA calculates flood insurance premiums resulting in unreasonable and unexpected premium increases for policyholders like Plaintiffs. For purposes here, Plaintiffs use the phrases "Legacy Rating" to describe the pre-change rates and algorithms and "Risk Rating 2.0" as the now operative algorithm to assess flood property insurance premiums. Under the restructured Risk Rating 2.0, Plaintiffs' flood insurance premiums dramatically increased and will continue to do so as the new policy parameters discard relevant factors like community mitigation and policy duration that the Legacy Rating program included. Additionally, Risk Rating 2.0 eliminated the grandfathering clauses previously enjoyed by the Legacy Rating program.

The changes to NFIP's approach to insurance holders' premium assessments constitute a major agency action and is contrary to the purpose of the program. Indeed, such sweeping changes to a law requires notice and comment; absent such, this is a clear violation of the law. Indeed, FEMA implemented the program without notice and comment and without explaining its methodology. To do so resulted in a per se constitutional violation that directly resulted in financial harm to the Plaintiffs and those similarly situated.

Plaintiffs' injuries likewise fall with NEPA's "zone of interest", which protects environmental interests. Here, Plaintiffs establish NEPA standing by asserting both economic and environmental interests. Plaintiffs' economic injuries are significant, but the harms stemming from Risk Rating 2.0 are also environmental as they directly relate to the "harmony between man and his environment." 42 U.S.C. § 4321. Congress already found that "the availability of Federal . . .

1

insurance . . . [is] often [the] determining facto[r] in the utilization of land and the location and construction of public and private industrial, commercial, and residential facilities." 42 USC § 4002(a)(2).

Finally, the Government's unilateral institution of Risk Rating 2.0 constitutes a regulatory taking of Plaintiffs' property.

## FACTUAL BACKGROUND

To avoid needless repetition, Plaintiffs hereby incorporate by reference the background section of Plaintiffs opposition brief set forth in the related case, *Louisiana v. DHS*, No. 2:23-cv-01839 (Dkt. 75, at 1-9). In the interest of further brevity, Plaintiffs have resided in their home for 51 years and have maintained flood insurance through the NFIP since 1972.[1] When the Legacy Rating was in place, Plaintiffs' premiums were granted certain discounts due to the duration of insurance coverage; community mitigation efforts; and transfer of grandfathered policy premiums from seller to buyer. These discounts were made unavailable once Risk Rating 2.0 went into effect. The result was that Plaintiffs' insurance premiums unexpectedly increased by more than 25% between 2022 and 2023.[2] Thus, the Plaintiffs have experienced a direct injury-in-fact as a result of Defendants' conduct. Indeed, under the Administrative Procedure Act ("APA"), Plaintiffs have standing to challenge the changes to the Risk Rating 2.0 changes.

Defendants' assertion that Plaintiffs lack Article III Standing rings hollow. Simply, the changes to Plaintiffs' flood polices are substantive, were implemented without notice, and resulted in damages to Plaintiffs such that relief is appropriately sought through the APA, which permits

---

[1] R. Doc. 1-1 ¶ 5.
[2] *Id.* at ¶¶ 20-21.

the Court to set aside unlawful agency actions (like the restructured NFIP) as described by Plaintiffs in their Complaint and supported by the Hebert Declaration.

As pleaded, Plaintiffs' Complaint sufficiently alleges injuries directly caused by the implementation of Risk Rating 2.0 and demonstrates that the requested relief will redress those injuries. Additionally, Plaintiffs have standing to raise their NEPA claim as it falls within the "zone of interest" that the statute meant to protect. Plaintiff also sufficiently alleged that the Government effected a constructive or regulatory taking of Plaintiffs' property as set forth below.

## LEGAL STANDARD

Certain situations warrant the Court to first consider the merits of the claim according to Fed. R. Civ. P. 12(b)(6) before considering subject-matter jurisdiction. For example, when a federal statute provides the basis for both the subject-matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, a dismissal for lack of subject-matter jurisdiction rather than for failure to state a claim upon which relief can be granted is proper only when the allegations of the complaint are frivolous. *Loughlin v. U.S.*, 230 F. Supp. 2d 26 (D.D.C. 2002). Additionally, when the jurisdictional issues are so intertwined with the merits of the claim such that it is impossible to decide one issue without deciding the other, the motion to dismiss should be decided under Fed. R. Civ. P. 12(b)(6). *Montez v. Department of Navy*, 392 F.3d 147, 60 Fed. R. Serv. 3d 395 (5th Cir. 2004)(*see also* 27A Fed. Proc., L. Ed. § 62:433). Given the different standards governing a motion to dismiss for lack of subject-matter jurisdiction and a motion to dismiss for failure to state a claim, a plaintiff may be prejudiced if what is essentially a merits challenge for failure to state a claim is treated as a motion to dismiss for lack of subject-matter jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) (*see also*, 27A Fed. Proc., L. Ed. § 62:433).

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981). "A

motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1009 (5th Cir. 1998). Additionally, "the question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute, and conflation of the two concepts can cause confusion." *See, Bond v. United States*, 564 U.S. 211, 219, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011) (citation omitted).

Generally, motions to dismiss for failure to state a claim are viewed with disfavor. *Collins v. Morgan Stanley Dean Witter*,224 F.3d 496, 498 (5th Cir. 2000). In determining whether a plaintiff states a valid claim, a court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, a federal statute, namely the National Flood Insurance Program ("NFIP") and its implementation form the basis of this Court's subject matter jurisdiction and Plaintiffs' substantive claim for relief. Therefore, Defendants' Motion should be dismissed as Plaintiffs' claims are not frivolous. Further, as evidenced by Defendants' Motion to Dismiss, the jurisdictional issues in this matter are so intertwined with the merits that a motion to dismiss is not appropriate at this time.

## THE MAURSTAD DECLARATION IS NOT PROPER EVIDENCE

Defendants' motion to dismiss is dedicated entirely to arguing the merits of this case. Defendants offer no argument whatsoever regarding this Court's jurisdiction beyond conclusory statements. Defendants' choice to ignore the jurisdictional issues is understandable, as there is simply no reasonable argument to be made that this Court lacks jurisdiction over Plaintiffs' claims.

4

Nevertheless, Defendants' merit-based arguments are not proper for a 12(b)(1) motion. *See, Hannover Corp. of Am. v. Beckner*, 211 B.R. 849, 859-60 (M.D. La. 1997). The only issue on a Rule 12(b)(1) motion is whether a district court has "the statutory or constitutional power to adjudicate the case." *Burns v. E. Baton Rouge Par. Prison*, No. 14-245-JWD, 2015 WL 2163946, at *2 (M.D. La. May 7, 2015) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). The fact that Defendants have raised an attack on this Court's jurisdiction does not entitle them to introduce evidence as to the merits of the case. Accordingly, the Maurstad Declaration must be ignored with respect to Defendants' challenges under Rule 12(b)(1).

The Declaration submitted by Defendants also cannot be considered under Rule 12(b)(6). "In deciding a Rule 12(b)(6) motion, we cannot look outside the pleadings and must accept all well-pleaded facts as true, considering them, and the inferences to be drawn therefrom, in the light most favorable to the plaintiff." *LeBeouf v. Manning*, 575 Fed.Appx. 374, 375-76 (5th Cir.2014) (citations omitted). While the Fifth Circuit has recognized "one limited exception" by which courts may sometimes consider evidence in connection with a Rule 12(b)(6) motion, this exception is limited to "to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The only evidence referred to in Plaintiff's complaint is the Hebert Declaration. The Maurstad Declaration submitted by Defendants was not referred to in Plaintiffs' complaint or central to Plaintiffs' claims. Thus, the Maurstad Declaration cannot properly be considered under Rule 12(b)(6).

## STATUTORY AND REGULATORY FRAMEWORK

The congressional findings and declaration of purpose implementing the National Flood Insurance Act ("NFIA") codified at 42 USC § 4001 state in pertinent part:

(a) Necessity and reasons for flood insurance program The Congress finds that (1) from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; (2) despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to future flood losses; (3) as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures; and (4) if such a program is initiated and carried out gradually, it can be expanded as knowledge is gained and experience is appraised, thus eventually making flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection…

The National Flood Insurance Program ("NFIP") is a "child of Congress," *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978), enacted at the discretion of Congress, administered by FEMA, and underwritten by the Treasury. *See* 42 U.S.C. § 4001 et seq.; 44 C.F.R. § 62.23(i)(9). "It is uneconomical for private insurance companies to provide flood insurance with reasonable terms and conditions to those in flood prone areas. Therefore, in 1968 Congress established the [NFIP] to provide insurance coverage at or below actuarial rates." *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). One of the primary purposes of the NFIA and NFIP was to "[t]o assist in the provision of housing for low- and moderate-income families." Pub.L. No. 90-448, 82 Stat. 476. To assist in the goal of increasing homeownership, Congress included the NFIA, which in turn established the NFIP. Pub. L. No. 90-448, §§ 1301-1377, 82 Stat. 476, 572-89 (codified at 42 U.S.C. §§ 4001-4129). Subsequently, Congress passed the Stafford Act to establish the Hazard Grant Mitigation Program to provide hazard mitigation assistance in connection with flooding. 42 U.S.C. § 5170. This in turn helped increase mitigation efforts to reduce the impact of flooding events. Congress also passed the National Flood Insurance Reform Act expanding mandatory flood insurance requirements for properties with federally insured lenders. 42 U.S.C. § 4001 *et seq*.

In 2012, Congress passed the Biggert-Waters Act ("BW-12") which eliminated certain subsidies and grandfathering, with the purported goal of making the NFIP "more financially

stable." Pub. L. 112-141 § 100202, 126 Stat. 405. BW-12 barred lower rates for pre-FIRM properties, which benefitted from lower rates due to the reliance interests on those properties. The result of these changes was a dramatic increase in policyholder premiums. *See e.g.,* Letter to Majority Leader Reid, et al. (6/28/2012), Ex. 1.  In response to the significant rate increases, Congress passed the Homeowner Flood Insurance Affordability Act ("HFIAA"), which addressed affordability, while implementing long-term changes to the program yet still encouraging homeowners to maintain flood insurance. HFIAA was a mechanism to prevent policyholders from facing a dramatic and unsustainable rate all at once, returning to the original purpose of the law to make flood insurance affordable for homeowners. The implementation of Risk Rating 2.0 is contrary to the purpose of the NFIP to make flood insurance affordable for homeowners.

## ARGUMENT

### A. Plaintiffs Possess Article III Standing.

The Complaint presents an Article III case and controversy by alleging an injury in fact to Plaintiffs pursuant to the implementation of Risk Rating 2.0. The injury is both actual because the alleged unlawful conditions compel Plaintiffs' participation, which increased flood insurance premiums, dramatically decreased their Community Rating without explanation, and removed the right to have their policies grandfathered in. Moreover, the injury is imminent, because the alleged unlawful conditions threaten Plaintiffs' ability to remain in their home, deters potential buyers from purchasing the property as a result of the prohibition on grandfathering policies, and provides financial uncertainty due to the unexplained calculations and increases to their flood insurance premiums.

To have Article III Standing, a plaintiff must allege that he or she has been injured, that the defendant caused the injury, and that the requested relief will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "To establish injury in

fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robins*, 578 U.S. at 339, 136 S.Ct. 1540 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *TransUnion LLC v. Ramire*z, U.S., 141 S. Ct. 2190, 2200, 210 L.Ed.2d 568 (2021) *(quoting Spokeo*, 578 U.S. at 340–41, 136 S.Ct. 1540). "To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.' " *Glen v. Am. Airlines, Inc*., 7 F.4th 331, 335 (5th Cir. 2021) (alteration in original) (quoting *Trump v. Hawaii*, U.S., 138 S. Ct. 2392, 2416, 201 L.Ed.2d 775 (2018)). Meanwhile, to establish redressability, a plaintiff must show a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (quoting *Simon v. E. Ky. Welfare Rts. Org*., 426 U.S. 26, 45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Moreover, economic injury is the "quintessential injury upon which to base standing." *Tex. Democratic party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006).

###### i.   **Plaintiffs have sufficiently alleged a concrete injury in fact.**

Plaintiffs' claims meet these constitutional standing requirements. Plaintiffs own the property that is subject to Risk Rating 2.0 premium calculations, their flood insurance premiums increased dramatically and without explanation under Risk Rating 2.0, they lost subsidies and discounts they enjoyed under Legacy Rating, and their policies are no longer allowed to be grandfathered. Under Legacy Rating, Plaintiffs knew how their premiums were calculated and

understood modest increases would be imposed.[3] With the implementation of Risk Rating 2.0, Plaintiffs have experienced significant increases in policy premiums, without explanation, and which will continue to be subject to increases due to undefined phenomena like climate change. *Id.* Moreover, Risk Rating 2.0 does not offer Community Rating discounts, such that mitigation efforts taken on behalf of the community are either not discounted or not considered. Finally, Risk Rating 2.0's undisclosed calculations will, at a certain rate, cause financial uncertainty and make Plaintiffs' homes unaffordable.

For these same reasons, Risk Rating 2.0 violates the APA. Plaintiffs have standing to enjoin Risk Rating 2.0 because it harms the Plaintiffs by imposing surprise and unspecified increases in their premium rates and its removal of subsidies and discounts that Plaintiffs relied. In addition, enjoining Risk Rating 2.0 will prevent future financial uncertainty as a result of the failure of FEMA to disclose the calculations used, how the factors they consider are weighed, and ensure the methodology is reasonable rather than arbitrary. Plaintiffs' economic injuries are not insignificant, but even if they were, the amount of financial harm suffered by the Plaintiffs is not an element determinative of whether Plaintiffs have alleged facts, when accepted as true, sufficient to establish standing. *Haase v. Sessions,* 835 F.2d 902 (D.C. Cir. 1987); *see also*, *Lujan v. Defs. Of Wildlife,* 504 U.S. 555 (1992).

Curiously, Defendants' Motion alleges "Risk Rating 2.0 benefits Plaintiffs over the life of their policy."[4] Defendants' Brief goes on to claim the Plaintiffs' policy is expected to reach its full risk rate by 2025, and that Plaintiffs' premium will not be subject to any further increases after this point, as the full risk rate represents the premium cap.[5] However, FEMA's own policies make clear

---

[3] https://www.fema.gov/flood-insurance/work-with-nfip/risk-rating/single-family-home
[4] R. Doc. 18-1 p. 14.
[5] *Id*. at p. 14.

this is simply false. Defendants even admit as much stating "one exception is that very minor rate increases are possible based on future rate reviews."[6] This exception makes clear that Plaintiffs' premiums would be subject to future increases pursuant to rate reviews and therefore would not be capped in 2025 as Defendants argue.

### ii.   Defendants' assertion that Plaintiffs will receive speculative "future premium savings" is unfounded, unsupported and insufficient to defeat Plaintiffs' standing.

At the same time Defendants' allege Plaintiffs lack Article III Standing because they have not alleged a concrete injury, Defendants argue Plaintiffs will save "thousands of dollars in future premiums," which is speculative and supported neither by the vague and scarce evidence produced by FEMA.[7] Defendants try to downplay the significant increase in Plaintiffs' premiums under Risk Rating 2.0 by claiming that under the Legacy Rating approach they would "indefinitely" be subject to a 25% annual increase, and that they will be placed on a "glide path" to reach their full risk rate by 2025.[8] What is more, Defendants' failing to submit this major change for notice and comment and failing to disclose the methodologies used in the calculation of flood insurance premiums violated the APA.

Had Defendants followed the proper procedural requirements mandated by the APA, or at a minimum provided the underlying methodologies and/or explanation of the process, and the weight given to factors that FEMA used to calculate the new flood insurance premiums under Risk Rating 2.0, Plaintiffs would not face the surprise increases and uncertainty created by the apparent secrecy in the implementation of Risk Rating 2.0. Instead, FEMA refused to submit Risk Rating 2.0 for notice and comment, categorically rejected long standing policies that assisted long term

---

[6] *Id.*
[7] *Id.* at p. 11.
[8] *Id.* at p. 9.

insureds and implemented significant changes to calculations directly impacting Plaintiffs and others similarly situated. In addition to increasing Plaintiffs' premiums, these significant changes eliminated subsidies like the grandfathering program which directly impact Plaintiffs' ability to sell their home by decreasing its value as a result of potential buyers having to pay the full risk rate rather than the grandfathered rate under Legacy Rating. Risk Rating 2.0 has also deeply decreased the Community Rating discount, in addition to devaluing mitigation efforts. All of this has caused policyholders like Plaintiffs concrete harm.

    iii.    **The harm suffered by Plaintiffs is fairly traceable to the Defendants implementation of Risk Rating 2.0.**

Plaintiffs' harm is directly traceable to FEMA's implementation of Risk Rating 2.0, which will continue to cause harm as more premium payments are due and owing. "That is enough to establish traceability." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 310-11 (5th Cir. 2023). Additionally, as previously explained, the prohibition on grandfathering under Risk Rating 2.0 impairs Plaintiffs' ability to sell their homes because of the uncertain flood insurance premiums potential buyers will now face. The significant and unexplained decrease in their Community Rating, and the devaluation of mitigation efforts are also directly traceable to Risk Rating 2.0.  Therefore, Defendants' argument that the injuries suffered by Plaintiffs are not fairly traceable to Risk Rating 2.0 is without merit. The harm is also redressable by favorable action here. Preventing FEMA from implementing Risk Rating 2.0, and in turn "preventing the application of the unlawful rate imposed" is sufficient redress to establish standing. *Id*. at 311.

    **B.  Plaintiffs Assert Cognizable Harm Based on Other Interests.**

The Government next attacks Plaintiffs' standing alleging that their interest in property values, increased tax revenues, and future mitigation efforts are nothing more than generalized

harms applicable to all taxpayers and property owners in Louisiana and across the country.[9] However, Defendants are mistaken. A parallel can be drawn to *Sierra Club v. Utah Air Quality* 148 P.3d 975 (Utah 2006), wherein the Court held that affiants satisfied the standing requirements by pointing to the decrease in property values due to the expansion of a power plant, finding "health, recreation, and property interests are legally cognizable interests for standing purposes." *Id.* The Court reasoned that "the affiants' concerns may be shared by many who live near Delta…the affiants have not complained about the impact of the plaint's emissions on the community in general but have claimed they will direct affect them or their families." *Id.*   Here, as in *Sierra Club*, Plaintiffs' concerns may be shared by those who live in coastal communities in Louisiana--they have not complained about the impact of Risk Rating 2.0 on these communities but have claimed that the implementation of Risk Rating 2.0 has and will continue to directly impact them economically in addition to affecting their property values. "That others may also share their concerns and be subject to the same specific, individualized injuries does not make the potential harms any less personal." *Id.* Plaintiffs in this case merely seek the opportunity to ensure that the Secretary complies with the APA and the NFIP. Therefore, the injuries identified are sufficient to establish Article III Standing.

Defendants' additional contention that Plaintiffs' claims are only tenuously based on the implementation of Risk Rating 2.0 is unfounded as many of these events have already occurred. Plaintiffs have alleged Risk Rating 2.0 will devalue mitigation efforts and result in higher premium for residents. As evidenced by the Hebert Declaration, the Heberts received an unexplained $11.00 Community Rating discount when it had consistently been several hundred dollars. The Heberts did not receive any mitigation discounts despite the levee improvements which have prevented the

---

[9] R. Doc. 18-1 p. 15.

property from flooding for the last fifteen years. FEMA's own data shows that 70% of premiums saw an increase since the implementation of Risk Rating 2.0.[10] The Government fails to mention the harm that Risk Rating 2.0 causes by eliminating the grandfathering program, which allowed prospective homebuyers to keep the rate that the previous owner enjoyed and something which Plaintiffs, and others similarly situated,  relied. Under Risk Rating 2.0, any prospective buyer will now have to pay the full risk rated premium, which will deter potential buyers from purchasing homes. Plaintiffs have met their burden of proving that they have been injured, that Risk Rating 2.0 caused their injuries and that enjoining FEMA from continuing to implement Risk Rating 2.0, and paying Plaintiffs damages resulting from its implementation, will redress their injuries.

### C.  Plaintiffs' Claims are Within the "Zone of Interest" Contemplated by NEPA.

Defendants' assertion that Plaintiffs' claim does not fall within National Environmental Protection Act's ("NEPA") "zone of interest" is likewise misinformed.   The zone of interest test is "not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n*, 107 S.Ct. 750, 93 (1987). Plaintiffs need to only show that their interests share a "plausible relationship" to the policies underlying the statute. *Id*. at 403, 107 S.Ct. 750. Prudential standing is satisfied unless Plaintiffs "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id*. at 399, 107 S.Ct. 750. When a plaintiff alleges a "procedural injury"—such as the failure to comply with NEPA— the " 'normal standards for ... [the] immediacy' of the injury are relaxed." *Navajo Nation v. Department of the Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Although "injury in fact requires a likelihood that the challenged action, if ultimately taken, would

---

[10] R. Doc. 18-1 p. 14.

threaten a plaintiff's interests," *Id.* at 1161, the Court does not require the plaintiff to show that the agency would necessarily have reached a different decision had it complied with NEPA. *Lujan*, 504 U.S. at 572 n.7, 112 S.Ct. 2130. NEPA declares "a national policy which will encourage productive and enjoyable harmony between man and his environment." 42 U.S.C. § 4321. A plaintiff "with both environmental and economic injuries falls within NEPA's zone of interests even if the plaintiff's economic interests are the real 'impetus' for its lawsuit." *Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 F. App'x 287, 294 n.6 (5th Cir. 2018).

Here, Plaintiffs establish NEPA standing by asserting both economic and environmental interests. Mr. Hebert's Declaration addresses the Morganza-to-the-Gulf Hurricane Protection System's successful mitigation efforts, in addition to the local levee systems implemented since his home last flooded in 2008, and how those mitigation improvements have been instrumental in reducing the flooding risk to Plaintiffs and the surrounding communities.[11] Plaintiffs' economic injuries are significant, and the harms stemming from Risk Rating 2.0 are also environmental as they directly relate to the "harmony between man and his environment." 42 U.S.C. § 4321. Congress already found that "the availability of Federal . . . insurance . . . [is] often [the] determining facto[r] in the utilization of land and the location and construction of public and private industrial, commercial, and residential facilities." 42 USC § 4002(a)(2).

Courts have agreed with this congressional finding. *See, Fla. Key Deer v. Paulison*, 522 F.3d 1133, 1142-44 (11th Cir. 2008) (finding FEMA must comply with the ESA because it has significant discretion over land use in flood prone areas as a result of Congress directing FEMA to protect the "natural and beneficial floodplain functions")(quoting 42 U.S.C. § 4022(b)); *see also*

---

[11] R. Doc. 1-1 ¶ 15.

*Fla. Key Deer v. Stickney*, 864 F. Supp. 1222, 1233 (S.D. Fla. 1994). Indeed, in FEMA's own words, "changes to the NFIP are considered to be a major federal action." *See* Compl. ECF ¶233.

Both *Stickney* and *Paulison* confirm that the NFIP impacts the environment and that changes to the NFIP program must undergo an environmental analysis. Plaintiffs have showed that FEMA's transformation of the NFIP has an impact on the floodplains. As mitigation slows, damage to land and property increases. And as fewer people can afford to live in coastal areas, the types of development and construction change as well.  Under *Stickney* and *Paulison*, FEMA was required, but failed to, conduct an environmental analysis before implementing Risk Rating 2.0. Plaintiffs' NEPA claim falls squarely within the "zone of interest" that the statute intends to protect. As such, Plaintiffs have sufficiently alleged both Article III and Statutory Standing.

### D.  The Federal Government Waived Sovereign Immunity.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…42 U.S.C.A. § 1983. Additionally, while there is significant jurisprudence that states the contrary, an explicit waiver is unnecessary here because the Fifth Amendment right to just compensation is a "self-executing" right and the right to compensation itself contains a waiver of sovereign immunity. The Supreme Court has indeed referred to the Fifth Amendment right to just compensation as "self-executing." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987). The Supreme Court has explained that a Fifth Amendment takings claim is self-executing and grounded in the Constitution, such that additional "[s]tatutory recognition was not necessary." *Id*. (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)); see *United States v.*

15

*Dickinson*, 331 U.S. 745, 748 (1947). Further, the APA is the vehicle that waives sovereign immunity for all claims that do not seek monetary damages. Therefore, to the extent Plaintiffs seek injunctive relief, the Government waives sovereign immunity pursuant to the APA. 5 U.S.C. § 702.

**E.  Plaintiffs adequately state a Takings Clause Claim.**

Plaintiffs have cognizable Fifth Amendment property interests in their homes. The implementation of Risk Rating 2.0 and the increase in flood insurance premiums will make flood insurance unaffordable. If they are unable to afford flood insurance, a requirement of their mortgage company, they will lose their home. Compounding that injury, if Plaintiffs are forced to sell their home, they will likely be unable to do so due to FEMA's prohibition on grandfathering, which was allowed under the Legacy Rating program. Defendants mischaracterize the "taking" by trying to shift the blame to the mortgage company. However, the Government's institution of Risk Rating 2.0 is the cause of the unconstitutional taking.

**iv.    Regulatory Taking Claim.**

Regulatory takings jurisprudence recognizes that if a "regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158 (1922). The Supreme Court clarified that the test for how far was "too far" required an "ad hoc" factual inquiry. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646 (1978). That inquiry required considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action. *Id.* There are, however, two instances that give rise to a *per se* regulatory taking without a case-specific inquiry. The first is when there is a physical appropriation of property. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164 (1982) (requiring apartment building owner to allow installation of a cable box on rooftop was a physical taking of real property

which requires compensation). The second is where a regulation denies all economically beneficial or productive use of land. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016, 112 S. Ct. 2886, 2894 (1992) (regulation prevented owner of beachfront property from making using his land in order to preserve the coastline).

Here, Plaintiffs' Complaint and accompanying Declaration state that as a direct result of Risk Rating 2.0, they will be forced out of their homes due to the inability to pay the skyrocketing premiums. *See* R. Doc.1-1 Plaintiffs further allege that their homes will become functionally unusable. *See Id.* Plaintiffs state that Risk Rating 2.0 devalues and discourages mitigation because there is no clear way to understand its actual value or determine a return on investment. *See* Compl. R. Doc. 1 ¶106. Plaintiffs also sufficiently allege in their Complaint that because grandfathering is not available under Risk Rating 2.0, they can no longer keep a reasonable flood insurance premium rate and/or assign their policy to a purchaser under the same rating, making it more difficult to sell their home due to the high cost of insurance. *See Id.* at ¶¶111, 118.

Additionally, Plaintiffs' Complaint contains facts addressing the character of the Government such as allegations about Risk Rating 2.0, its purported purpose, and the significant changes that it makes to the NFIP. The Court should also consider how the Government implemented Risk Rating 2.0, without notice and comment and under a shroud of secrecy. Plaintiffs have sufficiently stated a constitutional takings claim and therefore Defendants motion should be dismissed.

<u>**CONCLUSION**</u>

Plaintiffs have sufficiently articulated facts to establish Article III standing to challenge the legality of Equity in Action and Risk Rating 2.0 in addition to Defendants' violation of the Administrative Procedure Act. Plaintiffs have also pled facts sufficient to state a claim pursuant to the Environmental Protection Act and a Fifth Amendment Takings Clause Claim. Therefore,

17

Defendants' Motion to Dismiss should be denied in its entirety. Alternatively, the Court should allow Plaintiffs to amend their Complaint to cure any judicially identified deficiencies.

Respectfully submitted,

CHEHARDY, SHERMAN, WILLIAMS, LLP

_____
JAMES WILLIAMS (No: 26141)
MATTHEW A. SHERMAN (No. 32687)
ANNA M. SINGLETON (No. 40050)
CHEHARDY SHERMAN WILLIAMS,
RECILE, & HAYES, LLP
1 Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
PH: (504) 833-5600
FX: (504) 833-8080
EM: james@thetrialteam.com
EM: matthew.sherman@thetrialteam.com
EM: anna@thetrialteam.com
*Attorneys for Plaintiff*

*and*

ANTHONY IRPINO (No.:24727)
LOUISE C. HIGGINS (No.: 31780)
PEARL A. ROBERTSON (No.: 34060)
IRPINO, AVIN & HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
PH: (504) 525-1500
FX: (504) 525-1501
EM:airpino@irpinolaw.com;
EM:lhiggins@irpinolaw.com;
EM:probertson@irpinolaw.com

*and*

18

J. CHRISTOPHER ZAINEY, JR. (No.: 32022)
LAMBERT, ZAINEY, SMITH, & SOSO, APLC
701 Magazine Street
New Orleans, LA 70130
PH: (504) 581-1750
FX: (504) 529-2931
EM: czainey@lambertzainey.com

*and*

E. JOHN LITCHFIELD (No.: 8622)
MICHAEL J. MARSIGLIA (o.: 30271)
BERRIGAN LITCHFIELD, LLC
111 Veterans Memorial Boulevard
Heritage Plaza - Suite 1720
Metairie, Louisiana 70005
PH: (504) 568-0541
FX: (504) 617-7644
EM: jlitchfield@berriganlaw.net
EM: mmarsiglia@berriganlaw.net

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the above and forgoing pleading using this Court's CM/EMF system to counsel of record participating in the CM/EMF system, or via electronic mail or by placing signed copies in the United States mail, certified postage prepaid on this 9th day of January 2024.

_____
Anna M. Singleton